UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                     Case No. 15-20095

vs.                                      HON. MARK A. GOLDSMITH

MICHAEL PAUL FARNSWORTH,

       Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE (Dkts. 114, 127)**

On February 11, 2015, Defendant Michael Paul Farnsworth was detained following an investigation that uncovered evidence that Farnsworth had knowingly received, possessed, and distributed child pornography. See Compl. (Dkt. 1); Order of Detention (Dkt. 4). Farnsworth subsequently pled guilty to distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). Judgment (Dkt. 81). On February 16, 2018, the Court sentenced Farnsworth to 120 months' imprisonment. Id. Farnsworth is incarcerated at FCI Milan and his anticipated release date—accounting for good conduct time—is August 19, 2023. Inmate Data (Dkt. 127-2).

On May 15, 2020, Farnsworth filed a motion for compassionate release based on his fear that his underlying health conditions—including asthma and a body mass index (BMI) of 31—increased his risk of contracting COVID-19 (Dkt. 91). The Court denied the motion because Farnsworth failed to show extraordinary and compelling reasons for release and because the factors listed in 18 U.S.C. § 3553(a) did not support releasing him (Dkts. 102, 109).

On February 22, 2021, Farnsworth, proceeding pro se, filed a new motion for compassionate release, again arguing that he has an increased risk of severe illness or death from COVID-19 due to

his underlying health conditions—including asthma, obesity, and gastroesophageal reflux disease (GERD)—and adding that he is also entitled to release to care for his sick mother (Dkt. 114). After the Government filed a response (Dkt. 117), Farnsworth filed a request for appointment of counsel to assist him in connection with his motion for compassionate release (Dkt. 120). The Court granted the request and ordered Farnsworth to file, through his newly appointed attorney, a supplemental brief in support of his motion for compassionate release (Dkt. 121). Instead of filing a supplemental brief, Farnsworth filed, through counsel, a second motion for compassionate release (Dkt. 127). In his second motion, Farnsworth argues that in addition to the reasons he articulated in his first motion, he is also entitled to release because the conditions of confinement during the pandemic have led to "significantly harsher punishment than could have been anticipated at the time of sentencing." Id. at 9. The Government filed a response (Dkt. 130), arguing that (i) Farnsworth failed to properly exhaust some of his claims, (ii) Farnsworth's stated reasons for release are not extraordinary and compelling, and (iii) the § 3553(a) factors do not support release (Dkt. 130). Farnsworth filed a reply (Dkt. 133).

Having considered all briefing and record materials submitted by the parties, the Court concludes that Farnsworth has failed to show extraordinary and compelling reasons for release and, further, the § 3553(a) factors do not favor release. Accordingly, the Court denies Farnsworth's motions.[1]

## I. ANALYSIS

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000,

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

1003–1004 (6th Cir. 2020). Before granting a compassionate release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the United States Court of Appeals for the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

The Court considers (i) whether Farnsworth properly exhausted his claims, (ii) whether extraordinary and compelling circumstances compel Farnsworth's release, and (iii) whether the § 3553(a) factors support Farnsworth's release.

**A. Exhaustion**

Before an inmate moves for compassionate release under 18 U.S.C. § 3582(c)(1), the inmate must either exhaust his or her administrative remedies with the Bureau of Prisons (BOP) or wait thirty days from when the inmate filed a request with his or her warden. United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020).

By way of background, Farnsworth sought compassionate release from the warden of his correctional facility before filing his first motion for compassionate release in May 2020 and again before filing the instant motions in 2021. On April 10, 2020, Farnsworth filled out a form to request compassionate release and submitted it to the warden. See BOP Records at PageID.928 (Dkt. 96-1). He checked a box on the form indicating that his request was based on "[d]ebilitated [m]edical [c]ondition." Id. In the section of the form asking about the extraordinary and compelling circumstances that warrant his release, Farnsworth referenced his statement that he attached to the form. Id. In this statement, Farnsworth explained that he seeks release based on fear that his age and his asthma rendered him vulnerable to COVID-19. Id. at PageID.929. Farnsworth also explained that if released, he could live with his mother and "assist her with activities of daily life." Id. The warden denied this request on April 24, 2020. Id. at PageID.931. Farnsworth appealed the denial, submitting a request for administrative remedy in which he argued that he should be released because his asthma and obesity increased his vulnerability to COVID-19. Id. at PageID.932. The warden denied this request on May 29, 2020. Id. at PageID. 934.

On December 17, 2021, Farnsworth submitted a new request for compassionate release to the warden. 12/17/20 Request at PageID.1105 (Dkt. 117-2). In this request, Farnsworth again checked the box indicating that his requested was based on debilitated medical condition. Id. He stated that he sought compassionate release because he "contracted COVID-19," and he suffered "long term [e]ffects of the virus," including "chest pain and shortness of breath." Id. He also mentioned that contracting COVID-19 affected his asthma. Id. In the section of the form asking about his proposed release plan, Farnsworth wrote that he planned to reside with his mother and he would "be a caregiver" for her. Id. The warden denied Farnsworth's request on December 31, 2020. Id. at PageID.1104.

4

The Government argues that § 3582(c)(1)(A) requires issue-specific exhaustion. The Government concedes that Farnsworth has met this requirement with respect to his request based on his own health conditions. Resp. to 2d Mot. at 4 (Dkt. 130). However, the Government contends that Farnsworth has failed to exhaust his administrative remedies with respect to his request based on his desire to care for his mother, arguing that Farnsworth mentioned his mother only in his requests as part of his re-entry plan. Id. at 5.

The Sixth Circuit has never held that issue-specific exhaustion is required in the compassionate release context. Nor does the statutory text contain an issue exhaustion requirement. See 18 U.S.C. § 3582(c)(1); United States v. Williams, 473 F. Supp. 3d 772, 775 (E.D. Mich. 2020) (noting that issue exhaustion "is not mandated in any plain terms of the statute"). Further, several courts within this District have rejected the notion that issue-specific exhaustion is required in the compassionate release context. See, e.g., United States v. Sherrod, No. 19-20139, 2021 WL 3473236, at *2 (E.D. Mich. Aug. 6, 2021) ("[T]his Court will join the majority of district courts in holding that issue exhaustion is not required."); United States v. Ferguson, No. 10-20403, 2021 WL 1685944, at *2 (E.D. Mich. Apr. 29, 2021) ("The Court is persuaded by the reasoning of the courts which have held § 3582(c)(1)(A) does not require issue exhaustion.").

Even assuming that § 3582(c)(1)(A) requires issue-specific exhaustion, the requirement is likely satisfied here. Farnsworth clearly mentioned his desire to be released to care for his mother in both requests to the warden, albeit in the re-entry plan section of his most recent compassionate release request form. Further, even if Farnsworth has not satisfied issue-specific exhaustion, this failure is of no consequence, as his motion nevertheless fails for the reasons discussed below.

### B. Extraordinary and Compelling Circumstances

#### i. COVID-19

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Courts generally consult the guidance on high-risk factors published by the Centers for Disease Prevention and Control (CDC) to determine whether a defendant's specific conditions place him at a higher risk of suffering severe illness from COVID-19. See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021).

Farnsworth argues that he is entitled to release because his obesity, asthma, and GERD increase his risk of severe illness from COVID-19. The Court disagrees. First, the CDC defines obesity as a body max index (BMI) greater than 30.[2] BMI is a measurement of body fat based on height and weight.[3] Farnsworth does not proffer his height or weight. And while Farnsworth's medical records indicated that he weighed 237 pounds as of January 29, 2021, see BOP Health Records at PageID.1408 (Dkt. 131-1), they do not indicate his height. Thus, Farnsworth has failed to provide the Court with sufficient information to determine his BMI. As a result, Farnsworth

---

[2] CDC, "People With Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/6LE4-JZUF].

[3] National Heart, Lung, and Blood Institute, "Calculate Your Body Mass Index," https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm [https://perma.cc/9MHQ-ZMQX].

has failed to show that he has a BMI that places him at higher risk of severe illness from COVID-19.

Second, although the CDC recognizes "moderate to severe asthma" as a health condition that can increase an individual's risk of severe illness,[4] Farnsworth does not specify the severity of his asthma. Nor do his medical records reflect that he has moderate or severe asthma; rather, they indicate that he has "unspecified" asthma. See BOP Health Records at PageID.1408. This Court and others have declined to find that asthma of unspecified severity is an extraordinary and compelling reason for release. See United States v. King, No. 18-20416, 2021 WL 1220864, at *2 (E.D. Mich. Apr. 1, 2021) (citing United States v. Seals, No. 13-00653, 2020 WL 3578289, at *4 (D. Haw. Jul. 1, 2020)). Without knowing whether an inmate has moderate or severe asthma, a court would be speculating if it were to conclude that the inmate's asthma places him or her at higher risk for severe illness from COVID-19. Further, this Court and others have declined to grant compassionate release where a defendant's asthma appears to be well-controlled through medication. See id.; United States v. Harris, No. 17-20485, 2020 WL 4788027, at *3 (E.D. Mich. Aug. 18, 2020). Farnsworth's medical records reflect that his asthma is well-managed through use of an inhaler. BOP Health Records at PageID.1402 (indicating that Farnsworth has been prescribed an inhaler to be used as needed).

Third, the CDC does not recognize GERD as a condition that increases an individual's risk of severe illness.[5] And Farnsworth does not provide any other authority showing that GERD can

---

[4] CDC, "People With Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/6LE4-JZUF].

[5] CDC, "People With Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/6LE4-JZUF].

increase his risk. Thus, there is no reason to conclude that Farnsworth's GERD diagnosis heightens his vulnerability to the virus.

Farnsworth's argument that he has an increased risk of severe illness from COVID-19 is further weakened by his vaccination status. He received his second dose of the two-dose Pfizer vaccine on July 9, 2021. BOP Health Records at PageID.1451. Thus, as of July 23, 2021, Farnsworth was fully vaccinated, meaning that he is protected to the full extent of the vaccine.[6] According to the CDC, the vaccine reduces the risk of COVID-19 among people who are fully vaccinated "by 90 percent or more."[7] Further, for people who are vaccinated but still contract COVID-19, the vaccine has been shown to "provide protection against severe illness and hospitalization among people of all ages eligible to receive [it]." Id. Significantly, "[t]his includes people . . . who are at higher risk of severe outcomes from COVID-19." Id.

Farnsworth's argument is also weakened by the current COVID-19 conditions at FCI Milan. Presently, of the 1,405 inmates at FCI Milan,[8] 909 have been vaccinated (64.69%).[9] Further, there are currently no confirmed active cases of COVID-19 among inmates and only two cases among staff at FCI Milan.[10]

---

[6] CDC, "When You've Been Fully Vaccinated," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html [https://perma.cc/R9T5-XZMZ].

[7] CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/RY9T-ZCCR].

[8] BOP, "FCI Milan," https://www.bop.gov/locations/institutions/mil/ [https://perma.cc/KFL9-C6UV].

[9] BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ (last visited Oct. 25, 2021).

[10] BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ (last visited Oct. 25, 2021).

The Court briefly addresses two additional arguments that Farnsworth raises regarding COVID-19. First, Farnsworth tested positive for COVID-19 in November 2020, BOP Health Records at PageID.1449, and in his most recent compassionate release request to the warden, he stated that he sought compassionate release because he "contracted COVID-19," and he suffered "long term [e]ffects of the virus," including "chest pain and shortness of breath." 12/17/20 Request at PageID.1105. To the extent that Farnsworth requests compassionate release based on long-term symptoms from his COVID-19 infection, the Court denies this request. Farnsworth's health records show that he does not continue to experience chest pain. Specifically, a medical note entered on July 15, 2021 states that Farnsworth "denies chest pain with radiation to his jaw, dizziness, nausea, vomiting, sweating, but reports [shortness of breath] . . . that he has had since he had covid." BOP Health Records at PageID.1396. And while this note suggests that Farnsworth may continue to experience shortness of breath, other courts have held that such a long-term symptom from COVID-19 does not constitute an extraordinary and compelling reason to release a prisoner where the prisoner has been evaluated for the symptom but does not require treatment for it. See, e.g., United States v. Tolbert, No. 3:08-CR-142-CRS, 2021 WL 3232421, at *5 (W.D. Ky. July 29, 2021) (denying a prisoner's motion for compassionate release where the prisoner "indicate[d] he has some shortness of breath since being infected," but "the medical records indicate that he was evaluated for this shortness of breath and there is no indication that treatment was required," which "is a far cry from the crippling lung damage reported by so-called 'long-haulers' after becoming seriously ill from the infection"). This Court adopts the same approach. There is no indication in Farnsworth's medical records that his shortness of breath requires treatment. Thus, Farnsworth's alleged long-term symptoms from COVID-19 do not warrant releasing him.

Second, to the extent that Farnsworth seeks compassionate release based on his contention that the pandemic has created a harsher punishment than was intended at sentencing, the Court finds this argument entirely unpersuasive. Farnsworth complains that because of COVID-19, he "experienced varying forms of quarantine," including "spen[ding] time in both solitary confinement and dorm-style quarantines." 2d Mot. at 9. This is neither an extraordinary nor compelling reason for release. Nearly all Americans experienced some sort of lockdown during the pandemic. Lockdown and related efforts, such as social distancing, were necessary steps to minimize the spread of the virus. To the extent that Farnsworth suggests that such COVID-19 prevention efforts entitle him to release, this argument serves only to undercut his position that he fears contracting the virus while incarcerated.

### ii. Caregiving

Farnsworth alternatively seeks compassionate release in order to care for his mother.[11] Courts are disinclined to grant a motion for compassionate release premised on an inmate's desire to care for his or her family member where the inmate has failed to provide medical documentation of the family member's health issues. See, e.g., United States v. Corbett, No. 3:15-CR-107, 2021 WL 3024846, at *3 (E.D. Tenn. July 16, 2021); United States v. Morgan, No. 2:19-CR-060, 2021 WL 2383181, at *3 (E.D. Tenn. June 10, 2021); United States v. Corley, No. 3:13-cr-00097-9,

---

[11] Some courts have held that an inmate's desire to care for a family member is not extraordinary and compelling unless the inmate is the only available caregiver. See, e.g., United States v. Ashrafkhan, No. 11-20551, 2021 WL 2431716, at *3 (E.D. Mich. June 15, 2021). According to the Presentence Investigation Report (PSR), Farnsworth has two adult siblings who could potentially help care for his mother, see PSR ¶ 47, and, therefore, Farnsworth is not his mother's only available caregiver. Farnsworth argues that the standard should be whether there are any other reasonably available caregivers. According to Farnsworth, he is the only reasonably available caregiver for his mother. The Court need not reach this question, as Farnsworth is unable to show that his desire to care for his mother is extraordinary and compelling for another independent reason, discussed below.

2021 WL 119640, at *1 (M.D. Tenn. Jan. 13, 2021). This Court is likewise disinclined to do so. As other courts have recognized, it is not extraordinary or otherwise uncommon for an inmate to leave behind vulnerable family members. See, e.g., Morgan, 2021 WL 2383181, at *3. Without proper documentation of a family member's health condition, the Court cannot assess whether there exist truly extraordinary circumstances for release—i.e., whether the family member has such a crippling illness that he or she requires around-the-clock assistance to perform daily activities.

Here, Farnsworth has failed to provide medical documentation of his mother's health condition. Rather, Farnsworth provides an email from his mother stating that she has "many illnesses" including "rheumatoid arthritis" and a "stomach problem." Support Letters at PageID.1333 (Dkt. 127-3).[12] These asserted health conditions are neither sufficiently specific for the Court to assess whether they require the constant assistance of a caregiver nor supported by any medical documentation. She also states that she "would like [her] son to get out of prison to help [her]," that "[her] son would be a big help to [her]," and that she "[does not] like being alone." Id. While it is unfortunate that Farnsworth's mother misses her son, this is not extraordinary nor is it a compelling reason to grant Farnsworth release.

For these reasons, the Court holds that Farnsworth has failed to show an extraordinary and compelling reason to grant him release. Even if he had, Farnsworth's release would still be unwarranted based on the § 3553(a) factors, as explained below.

---

[12] The PSR reflects that Farnsworth's mother has recurring blood clots, had surgery for a knee replacement in 2015, and was scheduled to have surgery to repair her collarbone—which she shattered after falling—in early 2018. PSR ¶ 46. However, there is no indication that Farnworth's mother presently requires constant care for these injuries, which occurred several years ago.

11

### C. Section 3553(a) Factors

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

The nature and circumstances of Farnsworth's offense weigh heavily against granting him release. Farnsworth amassed a collection of thousands of images and hundreds of videos depicting prepubescent children—some as young as seven years old—engaging in sexual activities with adults. PSR ¶¶ 13–16. He also collected images and videos depicting bestiality. Id. ¶ 16. Farnsworth distributed these images and videos to others via the internet. Id. In exchange for giving other internet users access to these images and videos, Farnsworth would demand access to those users' own child pornography collections. Id. He repeatedly told other internet users that he liked girls between the ages of eight and ten. Id. During a pre-polygraph test interview, Farnsworth admitted that he began looking at child pornography when he was 20 years old and that as an adult, he had sex several times with a 15-year-old girl. Id. ¶ 18.[13]

---

[13] The Government contends that while detained during the pendency of this case, Farnsworth ordered books about the rape and murder of elementary school children as well as books about serial killers. Resp. to 2d Mot. at 30. When the chief psychologist of the detention center confronted Farnsworth about the books, Farnsworth stated that he did not believe that the books presented any problem. Id. The psychologist opined that Farnsworth's interest in books of this subject matter presented a "clear example" of "continued risk relevant behaviors" and requested the information be considered at sentencing. Id. The psychologist also emphasized the importance of Farnsworth participating in a sex offender treatment program. Id. (citing Chief Psychologist Letter (Dkt. 80-2)). Farnsworth argues that he intended to order a different, non-problematic book by the same title. 2d Mot. at 15. Even if Farnsworth mistakenly ordered books about raping and murdering children, this does not alter the fact that Farnsworth engaged in an abundance of other disturbing and harmful conduct, nor does it mitigate his asserted unwillingness to participate in the sex offender treatment program (discussed below).

Distribution of child pornography is not a victimless crime. As the Sixth Circuit and other circuit courts have explained, "disseminating images perpetuates the producer's abuse, . . . the images represent an invasion of the privacy of the depicted child, and . . . the consumer creates an economic motive for the creation and distribution of child pornography." United States v. Gray, 641 F. App'x 462, 468–469 (6th Cir. 2016) (citing United States v. Norris, 159 F.3d 926, 929 (5th Cir. 1998)). Thus, not only were Farnsworth's crimes not victimless but, rather, they involved numerous victims—the minor children depicted in the many images and videos that Farnsworth distributed. See id. (citing United States v. Hibbler, 159 F.3d 233, 237 (6th Cir. 1998)). Given his high number of victims, the extremely young ages of the victims, and the harm inflicted upon them, Farnsworth's crimes were undoubtedly serious.

However, as Farnsworth points out, several considerations support granting him release. Specifically, Farnsworth has served over half of his sentence; other than one disciplinary infraction for being in an unauthorized area, Farnsworth has maintained a clean disciplinary record in prison, see Inmate Discipline Data (Dkt. 127-4); Farnsworth has a minimal criminal history, consisting of only two convictions for operating a vehicle while visibly impaired, PSR ¶¶ 39–40; Farnsworth is housed at a low-security institution; and he has strong support from his family members, several of whom wrote letters in support of Farnsworth's motion for compassionate release, see Support Letters. While these facts are not insignificant, they are eclipsed by two overriding concerns.

First, there is a notable course towards rehabilitation in which Farnsworth has refused to participate: the sex offender treatment program. A recent administrative note from the BOP Psychology Services indicates that a Doctor of Psychology met with Farnsworth to discuss the program, and Farnsworth "denied interest" in participating in the program. 06/07/21 BOP Psychology Services Administrative Note (Dkt. 130-2). Given the length and severity of

13

Farnsworth's child pornography offenses, he has a serious risk of recidivism. Thus, it would be ill-advised to release Farnsworth when he has expressed an unwillingness to participate in a program that is specifically designed to reduce the risk of recidivism by sexual offenders like him.[14] Absent participation in such a program, the Court cannot say with any confidence that Farnsworth would not commit further child pornography offenses if released at this time.

Second, the Court is concerned by the fact that if released now, Farnsworth appears to intend to live with his mother to care for her. This is where Farnsworth lived prior to his arrest. PSR ¶ 50. In other words, Farnsworth would be returning to the exact environment where he distributed pornography. Allowing Farnsworth to returning to this environment would likely negatively impact his ability to avoid reoffending.

Farnsworth's willingness to abide by terms of supervision such as home confinement does not assuage the Court's fears that he would commit new child pornography offenses if released at this time. At least one other court within this circuit has rejected the argument that home confinement is sufficient to protect the public from child pornography crimes like those Farnsworth committed. See United States v. Miezin, 456 F. Supp. 3d 911, 916 (N.D. Ohio 2020). Specifically, in denying a motion for compassionate release filed by a defendant convicted of receipt and distribution of child pornography, that court held that home confinement would not lessen the defendant's danger to the community. Id. As that court explained, "[the defendant's] crime does not require anything more than access to the internet. In today's society with

---

[14] Farnsworth suggests that he would be willing to participate in this program upon being released. See 2d Mot. at 17 ("When released, Mr. Farnsworth will be able to participate in treatment immediately."). It is concerning that Farnsworth may only be interested in participating in the program if it gets him released early. In any event, the fact that Farnsworth has not yet participated in the program—and has expressed no interest in doing so—strongly suggests that he has not been sufficiently rehabilitated and is not prepared to succeed if he were released now.

smartphones, tablets, laptops, smart TVs, and countless other devices, it would not be possible to place [the defendant] in home confinement and eliminate his ability to engage in his prior criminal conduct." Id.

To protect the public and promote respect for the law, the Court declines to grant Farnsworth's motion for compassionate release.

## II. CONCLUSION

For the reasons stated above, Farnsworth's motions for compassionate release (Dkts. 114, 125) are denied.

SO ORDERED.

Dated: October 26, 2021  　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan  　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 26, 2021.

　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　KARRI SANDUSKY
　　　　　　　　　　　　　　　　　　　　　Case Manager